[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner claims that among the charges for which he was convicted and sentenced is a conviction for Robbery in the First Degree, 53a-134(a)(4).[1] That specific portion of the criminal statute for which he was convicted does not invoke a mandatory minimum term of imprisonment. The Commissioner, nonetheless, precludes the petitioner from consideration for supervised home release (hereinafter referred to as SHR) as he does for all other inmates convicted of any portion of the Robbery in the First Degree statute.[2] The petitioner claims that the Commissioner's action is illegal. CT Page 4308
The statutory provisions governing eligibility for SHR are contained not only in Section 18-100(e) but also in Conn. Gen. Stat. Sections 18-81 and 18-100a.
 Section 18-81. The commissioner of correction shall administer, coordinate and control the operations of the department and shall be responsible for the overall supervision and direction of all instructions, facilities and activities of the department. He shall have for the administrative practices and custodial and rehabilitative methods of said institutions and facilities in accordance with recognized correctional standards. He shall establish, develop and maintain noninstitutional, community based service programs. He shall be responsible for establishing disciplinary, diagnostic, classification, treatment, vocational and academic education, research and statistics, training and development services and programs throughout the department. . . .
 Section 18-100. Work-release and education-release programs. Transfer to correctional institution, halfway house, group home, mental health facility or, until July 1, 1993, community residence. Release to place of abode. (a) The commissioner of correction, or such person as said commissioner delegates, may, at his discretion arrange for the continuation of the employment of any person committed to the custody of said commissioner in accordance with the provisions of section 54-92a, including persons committed for contempt of court, who is self-employed or who has been regularly employed. If such person has not been so employed the commissioner or his delegate or any suitable person or agency designated by the commissioner shall attempt to secure suitable employment for such person or provide for his attendance at an educational institution if his prior education, aptitude and ability indicate he would profit by such instruction.
Conn. Gen. Stat. Sec. 18-100(e) states in full:
 (e) If the commissioner of correction deems that the purposes of this section may thus be more effectively carried out, he may transfer any person from one correctional institution to another or to CT Page 4309 any public or private nonprofit halfway house, group home or mental health facility, or to an approved community residence with the concurrence of the warden, superintendent or person in charge of the facility to which said person is being transferred. Any inmate so transferred shall remain under the jurisdiction of said commissioner. Any inmate transferred to an approved community residence shall also be subject to specifically prescribed supervision by personnel of the department of correction until his definite or indeterminate sentence is completed.
These statutes gave the Commissioner apparent total discretion about determining eligibility to transfer inmates to community release programs and facilities. That discretion was narrowed, however, with the enactment of what is now Section 18-100b of our Statutes.
 Sec. 18-100b. Release of prisoners to an approved community residence. Eligibility. (a) Notwithstanding any provision of the general statutes, the commissioner of correction shall not release from confinement to an approved community residence pursuant to subsection (e) of section 18-100, any prisoner convicted of a capitol felony, as defined in section 53a-54b, a class A felony, a class B felony committed while such a prisoner was released from confinement to an approved community residence pursuant to subsection (e) of section 18-100, or a violation of section 21a-278, 21a-278a, 53a-54d, 53a-55, 53a-55a, 53a-56, 53a-56a, 53a-56b, 53a-57, 53a-58, 53a-59, 53a-70, 53a-70a or 53a-70b, or any prisoner convicted of any other offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court until such time as such prisoner has served such mandatory minimum sentence, or any prisoner convicted and incarcerated for more than one year for a violation of section 21a-277, which offense occurs on or after October 1, 1990, who has previously been convicted and incarcerated for a violation of section 21a-277, 21a-278 or 21a-278a.
The petitioner claims that these legislatively mandated prohibitions had the consequence of abrogating the Commissioner's authority under Conn. Gen. Stat. Sections18-81, 18-100(a) and 18-100(e) to either continue or establish disqualifications not compelled by Sec. 18-100b(a) CT Page 4310 and in addition to the disqualifications compelled by Section 18-100b(a).
In essence the petitioner's sole claim of illegality in this case is that in view of the fact that the legislature has forbidden SHR to certain prisoners, this prohibition is all inclusive and that the Commissioner no longer has authority to deny SHR to other classes of crimes.
To adopt the construction proferred by the petitioner would be to disregard the language of 18-100b (a), "[n]otwithstanding any provision of the general statutes, . . ." The legislature clearly intended that except with regard to the limitations clearly defined by 18-100b, the Commissioner was to retain his broad discretion otherwise. If a contrary conclusion were reached this court would have to infer that18-81, 18-100(a) and 18-100(e) had been repealed. Clearly, these provisions remain the law of this State.
The Court agrees with the Respondent that the case of 3 Dadiskos v. Liquor Control Commissioner, 150 Conn. 422,427-428 (1963) is controlling of the case at bar. The relevant language of that decision is:
 The plaintiff further claims that Section 204-5 of the commission's regulations is void so far as it declares that any violation of the regulations is a ground for the revocation of a permit. He argues that the explicit enumeration of the Liquor Control Act of several grounds for revocation; see, e.g., Sec. 30-52, 30-57, 30-58, 30-67; precludes the commission from adding any other grounds by regulation. Section 30-6 of the General Statutes expressly authorizes the commission to "make all necessary regulations for . . . [the purpose of enforcing the Liquor Control Act] and . . . [inter alia] for insuring proper, safe and orderly conduct of licensed premises." It is clearly within the broad delegation of power for the commission, by Section 204-10 of the regulations, to impose on all liquor permittees the duty not to permit unlawful conduct on permit premises; by Section 204-36 of the regulations, to impose on them the duty to cooperate with the police in the investigation of matters arising out of the conduct of the permit premises; and, by Section 204-5 of the regulations, to make noncompliance with any regulation a ground for revocation. CT Page 4311
The legislative scheme in this case is precisely the same as in Dadiskos, the legislature has not, in statutorily providing for disqualification, repealed the statutory discretion of the Commissioner to provide for additional disqualified classes.
The petitioner for writ of habeas corpus is dismissed.
Howard Scheinblum Superior Court Judge